1      **IN THE UNITED STATES DISTRICT COURT**
      **EASTERN DISTRICT OF NORTH CAROLINA**
2         **WESTERN DIVISION**

3

4 **UNITED STATES OF AMERICA,**   )
              )
5              )
              ) **Case No.**
6              ) **5:14-CR-00120-H-1**
              )
7 **TERESA LYN FLETCHER,**    )
     **Defendant.**    )
8
 _____

9

10       **ARRAIGNMENT HEARING**
   **BEFORE MAGISTRATE JUDGE KIMBERLY A. SWANK**
11     **SEPTEMBER 8, 2014; 10:48 A.M.**
      **GREENVILLE, NORTH CAROLINA**
12 _____

 **FOR THE GOVERNMENT:**
13

14 Adam F. Hulbig
 Assistant U.S. Attorney
 310 New Bern Avenue, Suite 800
15 Raleigh, North Carolina  27601-1461

16 **FOR THE DEFENDANT:**

17 William Andrew LeLiever
 5 West Hargett Street
18 Suite 310
 Raleigh, North Carolina  27601

19

20

21

22    Proceedings recorded by mechanical stenography,
 transcript produced by computer.
23 _____

24      **DAVID J. COLLIER, RMR, CRR**
     FEDERAL OFFICIAL COURT REPORTER
25       413 MIDDLE STREET
      NEW BERN, NC  28560

PROCEEDINGS

– – – o0o – – –

1     THE COURT:  All right.  Madam Clerk, if you'll call

2 the next matter and swear or affirm the defendant.

3     THE CLERK:  Calling for a plea pursuant to a criminal

4 information:  United States of America versus Teresa Lyn

5 Fletcher, Case Number 5:14-CR-120-1-H.

6     Would you please stand and place your left hand on

7 the bible and raise your right hand.  Please state your name.

8     THE DEFENDANT:  Teresa Lyn Fletcher.

9     THE CLERK:  Do you swear that the answers you will

10 make to the Court will be the truth to the best of your

11 knowledge and understanding, so help you God?

12     THE DEFENDANT:  Yes, ma'am.

13     THE COURT:  Ms. Fletcher, we are here for your

14 arraignment on some serious felony charges that have been

15 brought against you.  As an initial matter, I have in my hands

16 a document entitled Consent to Proceed Before United States

17 Magistrate Judge for the purpose of conducting your arraignment

18 and taking your plea, it appears to be signed by you, your

19 attorney and also by an Assistant United States Attorney on

20 behalf of the Government.  Did you sign this, ma'am?

21     THE DEFENDANT:  Yes, ma'am.

22     THE COURT:  And is it your knowing and voluntary

23 desire that for purposes of conducting your arraignment and

taking your plea that these proceedings be conducted by me, a
United States Magistrate Judge?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And do you understand that you are now
under oath and that if you answer any of my questions falsely,
your answers may be used in a separate prosecution against you
for making a false statement or for perjury?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And what is your full name, ma'am?

THE DEFENDANT:  Teresa Lyn Fletcher.

THE COURT:  And how old are you?

THE DEFENDANT:  55.

THE COURT:  How far did you go in school?

THE DEFENDANT:  College graduate.

THE COURT:  Are you able to read?

THE DEFENDANT:  Yes.

THE COURT:  Are you currently or have you recently
been treated for any mental illness or drug addiction?

THE DEFENDANT:  No.

THE COURT:  In the last 24 hours have you had any
alcohol, prescription medication or any other drugs or
substances of any kind, whether legal or illegal?

THE DEFENDANT:  No.

THE COURT:  Do you feel dizzy, lightheaded or
confused?

1              THE DEFENDANT:  No.

2              THE COURT:  Have you been furnished with a copy of

3    the charges that are pending against you?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Okay.  You've been charged in a

6    superseding criminal information that charges you with three

7    counts.  Count 1 charges you with committing bank fraud in

8    violation of Title 18 United States Code Section 1344, Count 2

9    charges again that you engaged in bank fraud in violation of

10   18 United States Code Section 1344, and Count 3 charges you

11   with mail fraud in violation of 18 United States Code Section

12   1341.

13             Now, do you understand the charges against you and

14   the maximum penalties -- actually, let me call upon the

15   United States Attorney at this time to advise you as to the

16   maximum penalties that apply with regard to each of those

17   offenses.

18             MR. HULBIG:  Thank you, Your Honor.

19             The maximum penalties as to each bank fraud count,

20   which are Counts 1 and 2 of the superseding criminal

21   information, are not more than 30 years imprisonment, a

22   $250,000 fine, five years of supervised release, three years

23   imprisonment upon revocation of supervised release, a $100

24   special assessment and restitution.  The maximum penalty with

25   respect to Count 3 charging mail fraud is not more than

1  20 years imprisonment, a $250,000 fine, three years of

2  supervised release, two years of imprisonment upon revocation

3  of supervised release, $100 special assessment and restitution.

4         THE COURT:  Thank you.

5         Now, Ms. Fletcher, do you understand the charges

6  against you and the maximum penalties that apply if you are

7  convicted of these offenses?

8         THE DEFENDANT:  Yes, ma'am.

9         THE COURT:  Okay.  You can have a seat, ma'am.

10         The felony charges that are pending against you have

11  been brought by the United States Attorney by the filing of a

12  criminal information.  You have a Constitutional right to be

13  charged by an indictment of a grand jury, but you can waive

14  that right and consent to being charged using the criminal

15  information that's been filed by the United States Attorney.

16  If you do not waive indictment, this arraignment proceeding

17  will not go forward today and the Government will be free to

18  proceed on the indictment that's previously been returned by

19  the grand jury against you in this case, or the Government can

20  return before the Judge and ask that it indict you on other

21  charges, including any charges that are contained in this

22  criminal information.

23         Now, the grand jury is composed of at least 16 and

24  not more than 23 persons.  At least 12 grand jurors must find

25  that there is probable cause to believe that you committed the

1    crime with which you are charged before you may be indicted.

2    If the Government presents its case to the grand jury, the

3    grand jury might or might not indict you of the charges that

4    are contained in the criminal information.  No one can predict

5    exactly what the grand jury would do in any particular case.

6            The grand jury is not restricted though to the

7    charges contained in the criminal information.  It would be

8    free to consider any charges that the Government wishes to

9    present to the grand jury, and if the grand jury finds probable

10   cause to believe that you committed other offenses, then the

11   grand jury could return an indictment charging you with those

12   additional offenses.  If you waive indictment by the grand

13   jury, the case will proceed against you on the U.S. Attorney's

14   criminal information just as though you had been indicted.

15           Now, have you discussed waiving your right to an

16   indictment by the grand jury with your attorney?

17           THE DEFENDANT:  Yes, ma'am.

18           THE COURT:  And do you understand your right to

19   indictment by a grand jury?

20           THE DEFENDANT:  Yes, ma'am.

21           THE COURT:  Has anyone made any threats or promises

22   to you in order to get you to waive your right to indictment?

23           THE DEFENDANT:  No, ma'am.

24           THE COURT:  Do you wish to waive your right to

25   indictment by the grand jury?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  And, Counsel, do you know of any reason

3    that your client should not be waiving her right to an

4    indictment in this case?

5          MR. LeLIEVER:  No, Your Honor.

6          THE COURT:  Okay.  Thank you.

7          Let the record reflect the defendant has knowingly

8    and voluntarily waived her right to an indictment and will

9    proceed with arraignment on the superseding criminal

10   information that's been returned in this case.

11         Now, Ms. Fletcher, do you understand the charges

12   against you?

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  And you understand what's going on in

15   court today?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Have you had any difficulty communicating

18   with your client or any reason to doubt her mental competency?

19         MR. LeLIEVER:  No, Your Honor.

20         THE COURT:  Does the Government have any reason to

21   doubt the defendant's mental competency in this case?

22         MR. HULBIG:  We do not, Your Honor.

23         THE COURT:  Let the record reflect that the Court

24   finds as a fact that the defendant, Teresa Lyn Fletcher, is

25   competent to appear, to understand the nature of these

1  proceedings and to ultimately plead in these matters.

2          Now, Ms. Fletcher, have you had time to and have you

3  in fact discussed your case with your lawyer?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  And has he answered all of your questions

6  concerning your case and your plea?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  And are you satisfied with your

9  attorney's advice and counsel to you?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  And did you hear and understand my

12  explanation earlier of your rights?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  And did you understand my general

15  explanation of how you might be sentenced in this case?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  Mr. LeLiever, were all formal plea offers

18  by the Government conveyed to the defendant?

19          MR. LeLIEVER:  Yes, Your Honor.

20          THE COURT:  Ms. Fletcher, I've been handed a

21  Memorandum of Plea Agreement dated September -- is that 7th?

22  It actually looks like a 9.  Today is the 8th.  Was that 7th?

23          MR. HULBIG:  Yes, Your Honor.

24          THE COURT:  It's dated September the 7th, 2014, and

25  it consists of eight pages.  It appears to be signed by you, by

1 your attorney and also by an Assistant United States Attorney

2 on behalf of the Government. Did you sign this document,

3 Ms. Fletcher?

4          THE DEFENDANT: Yes, ma'am.

5          THE COURT: And have you had an opportunity to read

6 and to discuss this plea agreement with your lawyer and did you

7 in fact do so before you signed it?

8          THE DEFENDANT: Yes, ma'am.

9          THE COURT: Okay. And it indicates that you are

10 pleading guilty to the superseding criminal information that's

11 been filed in your case.

12          Now, did the plea agreement represent in its entirety

13 any and all agreements that you have with the United States and

14 with the United States Attorney's Office?

15          THE DEFENDANT: Yes, ma'am.

16          THE COURT: And do you understand the terms, the

17 language, the words, even the legal phrases that are contained

18 in this agreement? Have you had an opportunity -- or do you

19 understand that, having had the opportunity to discuss those

20 with your attorney?

21          THE DEFENDANT: Yes, ma'am.

22          THE COURT: Okay. And did you discuss with your

23 attorney the appeal waiver that's contained in paragraph 2C on

24 page 1 of the Memorandum of Plea Agreement?

25          THE DEFENDANT: Yes, ma'am.

1          THE COURT:  And you understand that by entering into

2    this plea agreement and entering a plea of guilty, that you

3    will be giving up your -- you may be giving up your right to

4    appeal or to collaterally attack all or part of your conviction

5    and sentence?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  And do you have any questions about the

8    plea agreement?

9          THE DEFENDANT:  No, ma'am.

10          THE COURT:  Other than what's in this plea agreement,

11    has anyone made any promises to you in order to get you to

12    plead guilty?

13          THE DEFENDANT:  No, ma'am.

14          THE COURT:  Has anyone threatened you in any way in

15    order to persuade you either to plead guilty or to accept this

16    plea agreement?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  And are you pleading guilty of your own

19    free will because you are in fact guilty?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Do you understand that if you plead

22    guilty to the superseding criminal information, the counts

23    contained in that criminal information are felonies and you may

24    lose your valuable civil rights, and if you're not a

25    United States citizen, your immigration status may be adversely

1    affected?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  Do you understand that if I accept your

4    plea of guilty today you can't simply change your mind later

5    and ask for a new trial?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  And have you answered all of my questions

8    truthfully?

9            THE DEFENDANT:  Yes, ma'am.

10            THE COURT:  Do you understand that any sentencing

11    recommendations contained in the plea agreement, including

12    those in paragraph 5 on pages 7 and 8 concerning adjustments

13    regarding the fraud loss and a downward adjustment for

14    acceptance of responsibility, do you understand that those are

15    just recommendations and that the District Judge is not bound

16    by those recommendations?

17            THE DEFENDANT:  Yes, ma'am.

18            THE COURT:  And do you understand that the District

19    Judge is free to establish whatever advisory guideline range he

20    believes to be correct and to impose any sentence that he

21    believes to be just and proper regardless of what is said in

22    this plea agreement?

23            THE DEFENDANT:  Yes, ma'am.

24            THE COURT:  Do you need any more time to think about

25    your plea or to discuss your case with your attorney before

1  entering your plea?

2            THE DEFENDANT:  No, ma'am.

3            THE COURT:  Now, Ms. Fletcher, how do you plead to

4  Count 1 of the superseding criminal information?

5            THE DEFENDANT:  Guilty.

6            THE COURT:  And did you as charged in Count 1, from

7  on or about January the 18th, 2013 until on or about April the

8  5th, 2013, devise a scheme and artifice to defraud the Bank of

9  North Carolina and to obtain money and property owned by and

10 under the custody and control of Bank of North Carolina by

11 means of materially false and fraudulent pretenses,

12 representations and promises?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  And how do you plead to Count 2 of the

15 superseding criminal information?

16           THE DEFENDANT:  Guilty.

17           THE COURT:  Did you as charged in Count 2, from on or

18 about December 19th, 2012 until on or about October 16th, 2013,

19 devise a scheme and artifice to defraud TD Bank and to obtain

20 money and property owned by and under the control of TD Bank by

21 means of materially false and fraudulent pretenses,

22 representations and promises?

23           THE DEFENDANT:  Yes, ma'am.

24           THE COURT:  And how do you plead with regard to

25 Count 3 of the superseding criminal information?

1          THE DEFENDANT:  Guilty.

2          THE COURT:  Did you as charged in Count 3, from on or

3   about May 20 -- I'm sorry, May 30th, 2013 and continuing until

4   on or about October 1, 2013, devise a scheme and artifice to

5   defraud Liberty Mutual Insurance Company and to obtain money

6   and property from that company by means of materially false and

7   fraudulent pretenses, representations and promises, and cause

8   to be delivered by United States mail a reimbursement check

9   from Liberty Mutual?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  You can have a seat.

12         All right.  I will hear the Government's proffer as a

13  factual basis supportive of the plea.

14         MR. HULBIG:  Thank you, Your Honor.

15         With respect to Count 1 of the superseding criminal

16  information, had this case gone to trial the Government would

17  have proven, among other things, that on January 18th, 2013 the

18  defendant went to Bank of North Carolina's Chapel Hill branch

19  and completed a credit application in which she knowingly

20  falsified her financial information in order to obtain a

21  personal loan.  Later that same day, in furtherance of her

22  scheme to defraud the bank, the defendant e-mailed bogus

23  documents to the branch manager purporting to show her receipt

24  of $541,000 in wages during 2012; however, according to the

25  defendant's 2012 tax return which she filed only two days

later, the defendant's wages were about one-third of the amount
she had reported to the bank.  Misled by the defendant's
representations, the Bank of North Carolina, whose deposits
were at that time ensured by the FDIC, agreed to make the loan
to the defendant.

On January 28th, 2011, the defendant went to the
bank's Raleigh branch within Wake County, where she deposited
$7,000 of the loan proceeds into her checking account.  The
defendant never made any loan payments, any payments toward the
loan balance.  Instead, on April 5th, 2013, after the loan went
into default, the defendant filed a fraudulent identity theft
report with Equifax claiming that the loan account had been
fraudulently opened by someone other than herself.

Had this case gone to trial, the Government would
establish that this was part of the defendant's attempt to keep
a negative credit item from appearing on her credit report so
that she could continue to seek new financing sources.

With respect to Count 2, the Government would prove
at trial beyond a reasonable doubt that, among other things, in
December, 2012, the defendant signed a sales contract to
purchase her current residence at 2905 Cone Manor Lane in
Raleigh for approximately $1.85 million.  To finance the
purchase, the defendant applied to TD Bank for a $1.472 million
residential loan and a $185,000 home equity line of credit.

Throughout the loan approval and underwriting process

the defendant repeatedly lied to TD Bank about her financial

information and the nature of the loan transaction.  In the

defendant's signed loan application for the Cone Manor

property, for example, the defendant provided TD Bank with

false and grossly inflated information about her wages and her

cash assets.  In the same loan application the defendant made a

false declaration in which she denied that any part of the

down payment for the property had been borrowed.

TD Bank, whose deposits were FDIC insured at all

relevant times, ultimately approved over $1.65 million in loans

to the defendant as a result of her fraudulent scheme to obtain

financing for the purchase of the Cone Manor property.  On

February 20th, 2013, TD Bank disbursed the loan proceeds on the

defendant's behalf at the closing in Raleigh within

Wake County.  Over the 18 month time period that followed, the

defendant made only one payment to TD Bank that didn't bounce.

On October 16, 2013, the defendant faxed another

false identity theft report, this time to Experian, in which

she disputed the TD Bank loans, and the items were deleted from

her credit report.

With respect to Count 3 of the superseding criminal

information, the mail fraud count, had this case gone to trial,

the Government would have established beyond a reasonable doubt

that Liberty Mutual Insurance Company provided insurance

coverage for the Cone Manor property.  Between approximately

1  May, 2013 and October, 2013, the defendant made repeated false

2  claims against the homeowners policy for reimbursement of

3  expenses she allegedly incurred to repair the property after a

4  spring storm on April 19th, 2013.

5          In furtherance of her scheme, the defendant routinely

6  falsified and doctored records and then provided those records

7  to Liberty Mutual to support her reimbursement claims.  On the

8  basis of the defendant's submissions, Liberty Mutual would

9  process the claims and issue checks to the defendant, many of

10  which were mailed into this district from Liberty Mutual's

11  offices in Dover, New Hampshire.

12          For example, on May 30, 2013, Liberty Mutual sent via

13  United States mail a check for approximately $16,000 that was

14  intended to reimburse the defendant for the repair of her

15  Smart Home Automation System.  To substantiate her claim the

16  defendant had earlier provided Liberty Mutual with a bid

17  proposal from a Smart Home repair company that she materially

18  altered to look like an invoice for $16,000 worth of services

19  rendered.  In fact, no such services were ever performed and

20  defendant never paid for such services.

21          Your Honor, this is just some of the evidence the

22  Government would have proven beyond a reasonable doubt if this

23  case had gone to trial.  Thank you.

24          THE COURT:  Does the defendant have any objection to

25  the Government's proffer?

1     MR. LeLIEVER:  Not at this time, Your Honor.

2     THE COURT:  The Court is satisfied with the responses

3 given during this hearing and makes the following finding on

4 the record:  It is the finding of this Court in the case of

5 United States versus Teresa Lyn Fletcher that the defendant is

6 fully competent and capable of entering an informed plea, that

7 her pleas of guilty are knowingly and voluntarily made,

8 supported by an independent factual basis of each of the

9 essential elements of each of the offenses, and her pleas are

10 therefore accepted and she is hereby adjudged guilty of

11 Counts 1, 2 and 3 of the superseding criminal information.  The

12 Court hereby conditionally approves the Memorandum of

13 Plea Agreement.

14     Ms. Fletcher, you'll be notified of the date, time

15 and place of sentencing in your case, but it's anticipated that

16 sentencing will take place at the December 9th, 2014 term here

17 in Greenville before Judge Howard, and if defense counsel would

18 please contact probation regarding preparation of the

19 presentence report.

20     What is the Government's position with regard to

21 Ms. Fletcher's liberty status in this case?

22     MR. HULBIG:  Your Honor, the Government understands

23 that the defendant has been in compliance with her pretrial

24 release conditions.  In light of that fact, we would recommend

25 that the defendant remain on current conditions pending

1  sentencing.

2           THE COURT:  What's the status of the charges in

3  Wake County that came out on August 15th?  I believe there was

4  an arrest warrant issued for her.

5           MR. LeLIEVER:  Your Honor, those were dismissed.

6           THE COURT:  Those have been dismissed?

7           MR. LeLIEVER:  I think it is a worthless check that

8  had been paid and dismissed.  Due to the charges, we had been

9  trying to come together with a solution -- not a solution but a

10 way to mediate some of the -- mitigate, I guess, some of the

11 damages involved, and that's what she's trying to do.  That

12 charge, I believe, and I think I'm correct on the date, we have

13 taken care of that, that was dismissed from Wake County Courts.

14          Actually, yeah, it was dismissed prior to the Court

15 date.

16          THE COURT:  Okay.  Thank you.

17          All right.  I'm going to continue her on the

18 conditions that have previously been ordered in her case.

19 I believe that was an order entered by Judge Gates; is that

20 correct?

21          MR. HULBIG:  That's correct, Your Honor.

22          THE COURT:  So she will continue on those conditions.

23          Anything further on behalf of your client?

24          MR. LeLIEVER:  No, Your Honor.

25          THE COURT:  Anything further on behalf of the

```
1    Government?
2              MR. HULBIG:  Nothing further from the Government at
3    this time.  Thank you, Your Honor.
4              THE COURT:  Okay.  All right.  Good luck to you,
5    ma'am.
6                             -  -  -  -  -
7              (Proceedings concluded at 11:12 a.m.)
8                             -  -  -  -  -
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    C E R T I F I C A T E

2

3          This is to certify that the foregoing transcript of

4    proceedings taken in an arraignment hearing in the United

5    States District Court is a true and accurate transcript of the

6    proceedings taken by me in machine shorthand and transcribed by

7    computer under my supervision, this the 20th day of February,

8    2015.

9

10

11                                        /S/ DAVID J. COLLIER

12

13                                   DAVID J. COLLIER

14                                   OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25